**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____
                        )
Asid Mohamad, *et al.*,         )
                        )
             Plaintiffs,  )
v.                        )     Civil Action No. 1:17-cv-02385 (LAP)
                        )
Jibril Rajoub            )
                        )
             Defendant.  )
_____ )

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

---

Gassan A. Baloul (GB-4473)
SQUIRE PATTON BOGGS (US) LLP
30 Rockefeller Plaza
New York, NY 10112
Telephone:  (212) 872 9800
Facsimile:  (212) 872 9815
Email:  gassan.baloul@squirepb.com

Mitchell R. Berger (MB-4112)
SQUIRE PATTON BOGGS (US) LLP
2550 M Street NW
Washington, D.C. 20037
Telephone:  (202) 457 5601
Facsimile:  (202) 457 6315
Email:  mitchell.berger@squirepb.com

*Attorneys for Defendant Jibril Rajoub*

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ............................................................................................................. 1

FACTUAL BACKGROUND............................................................................................. 3

LAW AND ARGUMENT ................................................................................................. 4

I.      *Res Judicata* Bars Plaintiffs' Claims ................................................................... 4

II.     The Statute of Limitations Bars Plaintiffs' Claims Brought Pursuant to the TVPA, the ATS, and New York Law ..................................................................... 7

III.    This Court Lacks Personal Jurisdiction over Mr. Rajoub................................. 9

IV.     Plaintiffs' Claim Under the Alien Tort Statute Fails Because Plaintiffs Are United States Citizens and the Alleged Conduct Is Claimed to Have Occurred Outside of the United States .................................................................................... 13

V.      Plaintiffs' TVPA Claim Should Be Dismissed................................................. 14

        A.      The alleged acts were not committed under authority or color of law of a "foreign nation" ..................................................................................... 14

        B.      Plaintiffs failed to plead sufficient facts to establish standing under the TVPA ................................................................................................. 16

        C.      Plaintiffs failed to plead sufficient facts to state a claim for TVPA relief.......... 17

VI.     Plaintiffs' Claim for Alleged Violations of the Law of Nations Under 28 U.S.C. Section 1331 Should Be Dismissed .................................................................... 18

VII.    Plaintiffs' Common Law Claims Should Be Dismissed................................... 19

CONCLUSION................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ali Shafi v. Palestinian Auth.*,
642 F.3d 1088 (D.C. Cir. 2011) ...........................................................................19

*Almog v. Arab Bank, PLC*,
471 F. Supp. 2d 257 (E.D.N.Y. Jan. 29, 2007) ....................................................19

*Anago Franchising, Inc. v. Shaz, LLC*,
677 F.3d 1272 (11th Cir. 2012) ..............................................................................6

*Balintulo v. Daimler AG*,
727 F.3d 174 (2d Cir. 2013)..................................................................................14

*Baloco v. Drummond Co.*,
640 F.3d 1338 (11th Cir. 2011) ............................................................................17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................................17

*Bernstein v. Mount Ararat Cemetery, Inc.*,
2013 U.S. Dist. Lexis 61691 (E.D.N.Y. Apr. 30, 2013).........................................8

*Biton v. PLO*,
510 F. Supp. 2d 144 (D.D.C. 2007) ......................................................................16

*Burnham v. Superior Court of Cal.*,
495 U.S. 604 (1990)................................................................................................9

*Cameron v. Church*,
253 F. Supp. 2d 611 (S.D.N.Y. 2003)....................................................................5

*Chicot Cty. Drainage Dist. v. Baxter State Bank*,
308 U.S. 371 (1940)................................................................................................6

*Chowdhury v. Worldtel Bangl. Holding, Ltd.*,
588 F. Supp. 2d 375 (E.D.N.Y. 2008) ..................................................................18

*Chowdhury v. WorldTel Bangl. Holding, Ltd.*,
746 F.3d 42 (2d Cir. 2014)....................................................................................14

*Daimler AG v. Bauman*,
134 S. Ct. 746 (2014)..................................................................................... *passim*

*De Leon v. Marcos*,
659 F.3d 1276 (10th Cir. 2011) ..............................................................................6

*Derr v. Swarek*,
766 F.3d 430 (5th Cir. 2014) ..................................................................................6

*Doe v. Drummond Co.*,
2009 U.S. Dist. Lexis 132594 (N.D. Ala. Nov. 9, 2009).......................................17

*Edwards-Brown v. Crete-Monee 201-U Sch. Dist.*,
   2012 U.S. App. Lexis 16358 (7th Cir. Aug. 7, 2012) ............................................6

*Ellul v. Congregation of Christian Bros.*,
   2011 U.S. Dist. Lexis 29887 (S.D.N.Y. Mar. 23, 2011) ......................................8

*FDIC v. No. Bear Stearns Asset Backed Secs. I LLC*,
   92 F. Supp. 3d 206, 213 (S.D.N.Y. 2015) .........................................................12

*Fisher v. Great Socialist People's Libyan Arab Jamahiriya*,
   541 F. Supp. 2d 46 (D.D.C. 2008) ................................................................16, 17

*Frontline Processing Corp. v. Merrick Bank Corp.*,
   2014 U.S. Dist. Lexis 27571 (S.D.N.Y. Mar. 3, 2014) .....................................20

*Jaramillo v. Naranjo*,
   2014 U.S. Dist. Lexis 138887 (S.D. Fla. Sept. 30, 2014) .................................11

*Kadic v. Karadzic*,
   70 F.3d 232 (2d Cir. 1995) ..........................................................................11, 15

*Kaplan v. Lehrer*,
   173 Fed. Appx. 934 (2d Cir. 2006) ......................................................................7

*Kiobel v. Royal Dutch Petro. Co.*,
   133 S. Ct. 1659 (2013) ..........................................................................2, 13, 14

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione, etc.*,
   937 F.2d 44 (2d Cir. 1991) .................................................................................16

*Knox v. PLO*,
   306 F. Supp. 2d 424 (S.D.N.Y. 2004) ................................................................15

*Leibovitz v. City of New York*,
   2015 U.S. Dist. Lexis 170476 (S.D.N.Y. Dec. 18, 2015) ..................................20

*Lindquist v. Carroll*,
   2015 U.S. Dist. Lexis 148681 (D. Conn. Nov. 3, 2015) ......................................6

*Livnat v. Palestinian Auth.*,
   851 F.3d 45 (D.C. Cir. 2017) ........................................................................15, 16

*Marks v. United States*,
   430 U.S. 188 (1977) .............................................................................................9

*Mastafa v. Chevron Corp.*,
   770 F.3d 170 (2d Cir. 2014) ...............................................................................14

*Meinecke v. H & R Block of Houston*,
   66 F.3d 77 (5th Cir. 1995) ....................................................................................6

*Mohamad v. Rajoub*,
   634 F.3d 604 (D.C. Cir. 2011) ............................................................................19

*Mohamad v. Rajoub*,
   664 F. Supp. 2d 20 (D.D.C. 2009) ...........................................................7, 13, 19

*Mut. Produce, Inc. v. Penn Cent. Transp. Co.*,
  119 F.R.D. 619 (D. Mass. 1988).........................................................................6

*Nemaizer v. Baker*,
  793 F.2d 58 (2d Cir. 1986)............................................................................5, 6, 7

*Norton v. Mathews*,
  427 U.S. 524 (1976)...........................................................................................4

*Ntsebeza v. Ford Motor Co. (In re S. African Apartheid Litig.)*,
  15 F. Supp. 3d 454 (S.D.N.Y. 2014).................................................................12

*Samuels v. N. Telecom, Inc.*,
  942 F.2d 834 (2d Cir. 1991)............................................................................4, 5

*Serra v. Lappin*,
  600 F.3d 1191 (9th Cir. 2010) .........................................................................19

*Shafi v. Palestinian Authority*,
  686 F. Supp. 2d 23 (D.D.C. 2010) ................................................................4, 16

*Sikhs for Justice, Inc. v. Gandhi*,
  614 Fed. Appx. 29 (2d Cir. 2015).................................................................16, 17

*Sikhs for Justice, Inc. v. Nath*,
  596 Fed. Appx. 7 (2d Cir. 2014) ......................................................................14

*Sikhs for Justice v. Gandhi*,
  2014 U.S. Dist. Lexis 78322 (E.D.N.Y. June 9, 2014)........................................8

*Sosa v. Alvarez-Machain*,
  542 U.S. 692 (2004)......................................................................................2, 19

*State Nat'l Ins. Co. v. Cty. of Camden*,
  824 F.3d 399 (3d Cir. 2016)...............................................................................6

*In re Terrorist Attacks on September 11, 2001*,
  392 F. Supp. 2d 539 (S.D.N.Y. 2005)...............................................................17

*Ungar v. PLO*,
  402 F.3d 274 (1st Cir. 2005) ............................................................................15

*Waldman v. PLO*,
  835 F.3d 317 (2d Cir. 2016)...................................................................... *passim*

*Warfaa v. Ali*,
  811 F.3d 653 (4th Cir. 2016) ...........................................................................14

*Wiwa v. Royal Dutch Petroleum Co.*,
  2002 U.S. Dist. Lexis 3293 (S.D.N.Y. Feb. 22, 2002) .......................................15

*In re Wolf*,
  842 F.2d 464 (D.C. Cir. 1988) ...........................................................................6

**Statutes**

28 U.S.C. 1350................................................................................... *passim*

28 U.S.C. Section 1331....................................................................................2, 3, 18, 19

E.P.T.L. § 5-4.1.............................................................................................................8

N.Y. C.P.L.R. § 215(3) ................................................................................................8

**Other Authorities**

Donald L. Doernberg, *Resoling American Shoe,* 2 Tex. A&M L. Rev. 247 (2014)......................12

H.R. Rep. 102-367(I) (1991), reprinted in 1992 U.S.C.C.A.N. 84................................................17

John Preis, *The Dormant Commerce Clause As a Limit on Personal Jurisdiction*,
    102 Iowa L. Rev. 121 (2016) ..................................................................................................9

## INTRODUCTION

Plaintiffs voluntarily dismissed Defendant Jibril Rajoub, *with prejudice*, from an action commenced in this Court almost twelve years ago that was based on the same set of operative facts as alleged here. *See* Pls.' Not. of Vol. Dismissal of the Action Against Certain Defs. with Prej. [ECF No. 26] in *Asid Mohamad, et al. v. Jibril Rajoub, et al.*, Case No. 08-01800 (D.D.C. 2008) ("*Mohamad I*") [Ex. A[1]]. Dismissal of Plaintiffs' Complaint in this duplicative action is proper for three separate, threshold reasons.

First, *res judicata* bars all of Plaintiffs' claims. Plaintiffs' prior voluntary dismissal of Mr. Rajoub with prejudice precludes this follow-on action because the two actions are based on the same set of operative facts, and all of the claims Plaintiffs make here were brought, or could have been brought, in *Mohamad I*. Plaintiffs have no grounds to avoid this straightforward application of *res judicata*.

Second, the statute of limitations bars Plaintiffs' claims brought under the Torture Victim Protection Act ("TVPA"), the Alien Tort Statute ("ATS"), and New York law. The statute of limitations is ten years for both a TVPA and ATS claim, and less for the claims brought under New York law. Because Plaintiffs allege that the relevant conduct in this case occurred over twenty years ago, the TVPA, ATS, and New York law claims are time-barred.[2]

Third, this Court lacks personal jurisdiction over Mr. Rajoub. Plaintiffs do not allege that Mr. Rajoub is a United States citizen, or that he has suit-related contacts with New York. The only potential basis for personal jurisdiction over Mr. Rajoub is so-called "transient" general jurisdiction because, during a visit to the United States, he was served with the summons and

---

[1] "Ex." references exhibits to the Declaration of Gassan A. Baloul in support of this Motion, which is being filed contemporaneously.

[2] Plaintiffs' claims under "the Law of the West Bank" are not addressed here as Plaintiffs have not made the threshold showing that these claims even exist under Palestinian law.

complaint at an airport in New York.  In the wake of *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), transient general jurisdiction over foreign individuals with no connection to the United States other than physical presence is not constitutionally tenable.

Putting aside these three threshold reasons for dismissal of Plaintiffs' Complaint, Plaintiffs' claims are plagued with substantive infirmities that also require dismissal.

The ATS claim additionally fails because: (1) Plaintiffs are all United States citizens and the ATS, by its explicit terms, provides a right to relief only to "aliens;" and (2) under *Kiobel v. Royal Dutch Petro. Co*., 133 S. Ct. 1659 (2013), Plaintiffs cannot overcome the presumption against extraterritorial application that attaches to the ATS given that all of the alleged conduct occurred outside of, and thus does not "touch and concern," the United States.

The TVPA claim additionally fails because: (1) the TVPA requires action under authority or color of law of a "foreign nation" and, while Mr. Rajoub avidly supports U.S.-recognition of Palestine as a sovereign state, all federal courts addressing the issue have concluded that Palestine is not a "state," and that the PA and/or PLO therefore are not "state actors," as a matter of law; (2) Plaintiffs failed to plead sufficient facts to establish standing under the TVPA; (3) Plaintiffs have not plausibly alleged that Mr. Rajoub had any knowledge of, or involvement in, the alleged conduct (much less that he acted under color of authority); and (4) Plaintiffs failed to allege sufficient facts to plausibly show that they exhausted local remedies.

Plaintiffs' claim under 28 U.S.C. Section 1331 additionally fails because, as the Supreme Court held in *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004), Section 1331 does not provide a right to relief for an alleged violation of international law, and claims based on the "law of nations" are cognizable, if at all, only under the ATS.

Plaintiffs' state common law claims additionally fail because they are duplicative and unsupported by sufficient facts to state a claim for relief.

As explained in more detail below, Plaintiffs' Complaint should be dismissed for each of these reasons.

## FACTUAL BACKGROUND

Each of the Plaintiffs here sued Mr. Rajoub (and others) in this Court almost twelve years ago based on the same set of operative facts alleged here.  *See* First Am. Compl. [ECF No. 3] in *Asid Mohamad, et al. v. Jibril Rajoub*, et al., Case No. 1:05-cv-08335-LAP (S.D.N.Y. 2005) [Ex. B].  In *Mohamad I*, these same Plaintiffs alleged that Azzam Rahim, while in the West Bank, was taken by unnamed individuals to a prison in Jericho, West Bank, where Mr. Rahim was allegedly tortured and killed.  *Id.* ¶¶ 18, 22-24.  Plaintiffs asserted claims against Mr. Rajoub (and the other defendants in *Mohamad I*) for alleged violations of the ATS and the TVPA, as well as violations of the law of nations under 28 U.S.C. § 1331.  *See id.* ¶¶ 59-85.  Plaintiffs based all of their claims on events that allegedly occurred in September 1995.  *Id.* ¶¶ 1, 15.

This Court transferred *Mohamad I* to the District Court for the District of Columbia.[3] Plaintiffs voluntarily dismissed their claims against Mr. Rajoub (and others) **with prejudice** on October 7, 2009.  *See* Ex. A.  The district court entered an Order of Final Judgment dismissing with prejudice the claims against all defendants on December 2, 2009.[4]

Plaintiffs' claims here are substantively identical to their claims in *Mohamad I*, with one immaterial exception: Plaintiffs added common law claims arising under the laws of New York and the "West Bank" (meaning Palestine).  *See* Compl. ¶¶ 83-104.  Like the claims in *Mohamad*

---

[3]  *See* Memo and Order Granting Pls.' Mot. to Transfer [ECF No. 48] in *Asid Mohamad, et al. v. Jibril Rajoub, et al.,* Case No. 1:05-cv-08335-LAP (S.D.N.Y. 2005).

[4]  *See* Order of Final Judgment [ECF No. 28] *in Asid Mohamad, et al. v. Jibril Rajoub, et al.*, Case No. 08-01800 (RJL) (D.D.C. 2008) [Ex. C].

*I*, all of the claims here—including the claims under New York and "West Bank" law—are based on events that allegedly occurred in September 1995.  *See, e.g.*, *id.* ¶ 2.  In other words, the common law causes of action here could have been asserted against Mr. Rajoub in *Mohamad I*.

## LAW AND ARGUMENT

### I.    *Res Judicata* Bars Plaintiffs' Claims.

In *Mohamad I*, these same Plaintiffs voluntarily dismissed with prejudice their action against Mr. Rajoub,[5] which was based on the same operative facts alleged here.  Well-settled principles of *res judicata* preclude Plaintiffs from resuscitating their claims.[6]

The Second Circuit has repeatedly held that, "a dismissal with prejudice has the effect of a final adjudication on the merits favorable to defendant and bars future suits brought by plaintiffs . . . not only as to the matters actually litigated in the previous action, 'but as to all relevant issues which could have been but were not raised and litigated in the suit.'"  *See Samuels v. N. Telecom, Inc*., 942 F.2d 834, 836 (2d Cir. 1991) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986)).

In *Samuels*, the plaintiff filed an action under Title VII, and then stipulated to a voluntary dismissal with prejudice.  942 F.2d at 835-36.  The Second Circuit affirmed dismissal of a second case filed by the same plaintiff against the same defendant based on the same facts

---

[5]   The same attorney who filed this action represented the plaintiffs in *Mohamad I* and filed the notice of voluntary dismissal with prejudice.

[6]   While a federal court should generally first determine it has jurisdiction over a case before ruling on its merits, it is not necessary for this Court to resolve Mr. Rajoub's personal jurisdiction objection before dismissing this action on *res judicata* grounds.  *See Norton v. Mathews*, 427 U.S. 524, 532 (1976) (noting the practice of reserving "questions of our jurisdiction when the case alternatively could be resolved on the merits in favor of the same party"); *see also Shafi v. Palestinian Authority*, 686 F. Supp. 2d 23, 25 (D.D.C. 2010) ("[W]here the affected defendant does not insist that the jurisdictional issue be determined first . . . we cannot fault the district court for eschewing difficult jurisdictional and venue-related issues in favor of ordering dismissal on the merits.") (internal citations omitted) (*aff'd. on other grounds* Ali Shafi v. Palestinian Auth., 642 F.3d 1088 (D.C. Cir. 2011).

alleged in the first case, determining that "established principles of *res judicata*" barred the second suit because the "[p]laintiff [wa]s bound by his attorney's decision to sign the stipulation" for voluntary dismissal with prejudice in the first suit.  *Id.* at 835-37.  In *Nemaizer*, 793 F.2d at 60-61, the Second Circuit held that voluntary dismissal of a suit alleging labor law violations required dismissal based upon *res judicata* of a later filed suit by the same plaintiff against the same defendant alleging ERISA violations because the two cases were based on "the same operative facts."  The Second Circuit specifically held that the plaintiff's attorney's "failure to evaluate carefully the legal consequences of a chosen course of action," the voluntary dismissal with prejudice, "provide[d] no basis for relief from a judgment" in the first action.  *Id.* at 62.

Plaintiffs cannot avoid *res judicata* by asserting claims that could have been asserted in *Mohamad I*.[7]  "[N]ew legal theories do not amount to a new cause of action so as to defeat the application of the principle of *res judicata*" because *res judicata* "applies not only as to what was pleaded, but also as to what could have been pleaded."  *Cameron v. Church*, 253 F. Supp. 2d 611, 619 (S.D.N.Y. 2003).  The claims asserted here either actually were or, in the case of the common law claims, could have been asserted in *Mohamad I*.  This Court, therefore, should dismiss Plaintiffs' entire Complaint based on *res judicata*.  *See, e.g.*, *Cameron*, 253 F. Supp. 2d at 619-24 (dismissing the plaintiff's complaint in its entirety based on principles of *res judicata*, despite the fact that plaintiff "characterize[d] causes of action differently" in the second filed suit); *Samuels*, 942 F.2d at 835-36 (above); *Nemaizer*, 793 F.2d at 60 (above).

Nor can Plaintiffs avoid *res judicata* by attempting a collateral attack on the District of Columbia court's Order in *Mohamad I* adopting the Plaintiffs' Notice of Voluntary Dismissal

---

[7]  Plaintiffs' Fourth Claim for Relief for alleged common law violations of "The Law of the Forum State," and Plaintiffs' Fifth Claim for Relief for alleged violations of "The Law of the West Bank," were not brought in *Mohamad I*.  *See* Compl. ¶¶ 83-104.

With Prejudice.   First, a notice of voluntary dismissal under FRCP 41(a)(1) "automatically terminates the action" and "no court order is technically required."   *Lindquist v. Carroll*, 2015 U.S. Dist. Lexis 148681, at *5 (D. Conn. Nov. 3, 2015).   As the Fifth Circuit explained in *Derr v. Swarek*, 766 F.3d 430, 440-41 (5th Cir. 2014):

> A plaintiff's dismissal of his claims with prejudice is the 'legally operative act of dismissal pursuant to [Federal] Rule 41(a)(1)[(A)](i),' such that a 'district court's subsequent order to the same effect [is] superfluous.'   Because the court has no role to play in a Rule 41(a)(1) dismissal, it is of no consequence that the court lacks jurisdiction over the defendant.   If the plaintiff chooses to extinguish his rights forever, he is entitled to do so, and the defendant will reap the benefit of a *res judicata* bar to any attempt by the plaintiff to re-litigate the dismissed claims.

(alteration in original) (citations omitted) (quoting *Warfield v. AlliedSignal TBS Holdings, Inc.*, 267 F.3d 538, 541 (6th Cir. 2001)).[8]

Second, the District of Columbia court's jurisdiction in *Mohamad I* cannot be collaterally attacked here.   *See Chicot Cty. Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 377 (1940) (a federal court "has the authority to pass upon its own jurisdiction and its decree sustaining jurisdiction against attack, while open to direct review, is *res judicata* in a collateral action"); *Nemaizer*, 793 F.2d at 65 ("Even if a court does not expressly rule on matters relating to its

---

[8]   *See also Mut. Produce, Inc. v. Penn Cent. Transp. Co*., 119 F.R.D. 619, 620 (D. Mass. 1988) ("[O]nce the parties file their stipulations of dismissal, they become effective without any action by the court."); *State Nat'l Ins. Co. v. Cty. of Camden*, 824 F.3d 399, 406-07 (3d Cir. 2016) ("Every court to have considered the nature of a voluntary stipulation of dismissal under Fed. R. Civ. P. 41(a)(1)(A)(ii) has come to the conclusion that it is immediately self-executing."); *Meinecke v. H & R Block of Houston*, 66 F.3d 77, 82 (5th Cir. 1995) (finding that Rule 41(a)(1) stipulations "take effect when *filed* and do not require an order of the court"); *Edwards-Brown v. Crete-Monee 201-U Sch. Dist*., 2012 U.S. App. Lexis 16358, at *6-7 (7th Cir. Aug. 7, 2012) (holding that a voluntary motion seeking dismissal filed while plaintiff has absolute right to dismiss under Rule 41 effects immediate dismissal despite "motion" title); *De Leon v. Marcos*, 659 F.3d 1276, 1283 (10th Cir. 2011) (holding that a stipulation of dismissal "is self-executing and immediately strips the district court of jurisdiction over the merits"); *Anago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272, 1277-78 (11th Cir. 2012) (holding that a voluntary stipulated dismissal is self-executing, effective immediately on filing, and deprives the district court of jurisdiction to issue post-dismissal orders); *In re Wolf*, 842 F.2d 464, 466 (D.C. Cir. 1988) (holding that a voluntary dismissal is effective automatically).

exercise of jurisdiction, if the parties *could* have challenged the court's power to hear a case, then *res judicata* principles serve to bar them from later challenging it collaterally.").

Third, even if in hindsight Plaintiffs regret their decision to voluntarily dismiss *Mohamad I* with prejudice as against Mr. Rajoub, this is not a proper basis to relieve Plaintiffs from the *res judicata* effect of that decision.  *See Nemaizer*, 793 F.2d at 62 ("[A]n attorney's failure to evaluate carefully the legal consequences of a chosen course of action provides no basis for relief from a judgment."); *Kaplan v. Lehrer*, 173 Fed. Appx. 934, 935 (2d Cir. 2006) ("Mere dissatisfaction in hindsight with choices deliberately made by counsel is not grounds for finding the mistake, inadvertence, surprise or excusable neglect necessary to justify" relief from a prior judgment.). [9]

In sum, Plaintiffs' voluntary dismissal with prejudice in *Mohamad I* bars all Plaintiffs' claims against Mr. Rajoub because all of the claims here were brought, or could have been brought, in *Mohamad I*.  Plaintiffs have no basis to avoid this straightforward application of *res judicata*, and their Complaint should be dismissed in its entirety.

## II.    The Statute of Limitations Bars Plaintiffs' Claims Brought Pursuant to the TVPA, the ATS, and New York Law.

Plaintiffs' cause of action accrued over twenty-one years ago.  Plaintiffs allege that they first learned on September 29, 1995 that Mr. Rahim had been tortured and killed.  Plaintiffs filed their first Complaint on September 27, 2005, just days before the claims were time-barred.  *See* Compl. [ECF No. 1] in *Asid Mohamad, et al. v. Jibril Rajoub*, et al., Case No. 1:05-cv-08335-LAP (S.D.N.Y. 2005).  Plaintiffs filed the instant action almost seven years after they dismissed

---

[9] Plaintiffs made the strategic decision to file a notice of voluntary dismissal with prejudice in *Mohamad I* so that there would a full and final dismissal of the case that would be immediately appealable.  The voluntary dismissal filing occurred one week after the District Court of Columbia dismissed all Plaintiffs' claims against the PA/PLO.  *See Mohamad v. Rajoub*, 664 F. Supp. 2d 20, 24 (D.D.C. 2009).

their first action with prejudice.  *See* Ex. A.  The statute of limitations now requires dismissal of Plaintiffs' claims brought pursuant to the TVPA, the ATS, and New York law, even if those claims are not barred by *res judicata*.

The statute of limitations for Plaintiffs' TVPA claim and ATS claim is ten years.  *See* 28 U.S.C. § 1350 note, § 2(c) (statute of limitations for TVPA is ten years); *Ellul v. Congregation of Christian Bros.*, 2011 U.S. Dist. Lexis 29887, at *10 (S.D.N.Y. Mar. 23, 2011) ("The statute of limitations under the ATS, borrowed from the Torture Victim Protection Act, is ten years."). Because Plaintiffs allege that the relevant conduct in this case occurred over twenty years ago, both the TVPA claim and the ATS claim are time-barred.  *See, e.g.*, *Sikhs for Justice v. Gandhi*, 2014 U.S. Dist. Lexis 78322, at *11-13 (E.D.N.Y. June 9, 2014) (granting motion to dismiss a TVPA claim after finding that the claim was "plainly time-barred" because the alleged conduct occurred almost thirty years before the plaintiffs filed their suit); *Ellul*, 2011 U.S. Dist. Lexis 29887, at *9-13 (granting motion to dismiss an ATS claim because the relevant conduct was alleged to have occurred sixty years before the plaintiffs filed their complaint).

Plaintiffs' claims brought under New York law[10] are also time-barred.  The statute of limitations for Plaintiffs' intentional tort claims under New York law (assault, battery, prima facie tort, and intentional infliction of emotional distress) is one year.  *See* N.Y. C.P.L.R. § 215(3).  The statute of limitations for Plaintiffs' wrongful death claim under New York law is two years from the death of the decedent.  *See* N.Y. E.P.T.L. § 5-4.1.  While there is limited case law on a cause of action for breach of sepulcher under New York law, the statute of limitations for this claim appears to be three years.  *See Bernstein v. Mount Ararat Cemetery, Inc.*, 2013

---

[10]  *See* Compl. ¶¶ 83-93.

U.S. Dist. Lexis 61691, at *5, *10-11 (E.D.N.Y. Apr. 30, 2013). All of these claims are barred by the statute of limitations and should be dismissed.

### III.     This Court Lacks Personal Jurisdiction over Mr. Rajoub.

Plaintiffs do not allege that Mr. Rajoub is a citizen of the United States, that he has regular business or other dealings in the United States, that any of the Plaintiffs reside in the State of New York, or that any of the alleged conduct occurred in the United States. On these facts, this Court's exercise of personal jurisdiction over Mr. Rajoub would violate due process.

The only potential basis for this Court to exercise personal jurisdiction over Mr. Rajoub is "transient" general jurisdiction, as Mr. Rajoub was served with process while he happened to be in New York. But, as Justice Brennan expressed in his opinion concurring in the judgment nearly thirty years ago in *Burnham v. Superior Court of Cal.*, 495 U.S. 604, 632 (1990),[11] "every assertion" of personal jurisdiction, "even one pursuant to a 'traditional' rule such as ***transient jurisdiction, must comport with contemporary notions of due process***." (emphasis added).[12]

---

[11] In *Burnham*, the defendant was served with a summons and his wife's divorce petition during a trip to California to conduct business and visit his children. 495 U.S. at 608. The defendant moved to quash the service of process on the ground that the court lacked personal jurisdiction over him because his only contacts with California were several visits to the State for the purposes of conducting business and visiting his children. *See id.* The lower court's exercise of personal jurisdiction over the defendant was upheld by the Court. Because *Burnham* is a plurality decision, it should be confined to its facts and its precedential value is restricted to the "narrowest grounds." *See Marks v. United States*, 430 U.S. 188, (1977). Here, much different than the defendant in *Burnham*, Mr. Rajoub is not alleged to be a citizen of the United States; to have regular contacts with the state where he is being haled into court; or to have any children, or other family members, living in New York. Compared to *Burnham*, this case presents a stark example of how rote endorsement of transient general jurisdiction can violate due process rights.

[12] *Cf.* John Preis, *The Dormant Commerce Clause As a Limit on Personal Jurisdiction*, 102 Iowa L. Rev. 121, 161 (2016) ("Even though all nine Justices voted to uphold transient jurisdiction in *Burnham*, only four Justices concluded that its historical foundations alone justified its retention. Thus, *Burnham* does not hold that history is sufficient to justify transient jurisdiction against the Due Process Clause.")

*Daimler* demonstrates that contemporary notions of due process under American law do not support this Court exercising personal jurisdiction over Mr. Rajoub.  In *Daimler*, as here, plaintiffs asserted claims under the Alien Tort Statute and the Torture Victim Protection Act, as well as other claims arising from alleged torture committed in Argentina by the Argentinian government.  *See* 134 S. Ct. at 751.  The Court addressed whether the exercise of general jurisdiction over the foreign defendant, Daimler, by the Northern District of California violated Daimler's due process rights, "given the absence of any California connection to the atrocities, perpetrators, or victims described in the complaint."  *Id.*  The Court held that general jurisdiction over Daimler could not lie because Daimler could not be considered to be "at home" in California.  *See id.* at 760-62.  In reaching this conclusion, the Court determined that "general jurisdiction has come to occupy a less dominant place in the contemporary scheme" because, under "modern jurisdictional principles," the "Court has increasingly trained on the 'relationship among the defendant, the forum, and the litigation.'"  *Id.* at 758 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).  The Court also chided the Ninth Circuit for paying "little heed to the risks to international comity its expansive view of general jurisdiction posed."  *Id.* at 763.

In *Waldman v. PLO*, 835 F.3d 317, 332-35 (2d Cir. 2016), the Second Circuit applied *Daimler's* "at home" test in a case alleging claims, as here, under a federal statute and based on entirely overseas actions.  Reversing the trial court, the Second Circuit held that general jurisdiction could not be exercised over the PLO and PA because the two entities were "at home" in Palestine, not in the United States.  Importantly, the Court of Appeals held that "there is no reason to invent a different test for general personal jurisdiction depending on whether the defendant is an individual, a corporation, or another entity," especially considering that

"*Daimler's* reasoning was based on an analogy to general jurisdiction over individuals." *Id.* at 332.[13]

Because *Daimler's* "at home" test should apply equally to individuals and entities, *Daimler* "severely undercut the constitutional basis for tag jurisdiction over foreign defendants," like Mr. Rajoub. *Jaramillo v. Naranjo*, 2014 U.S. Dist. Lexis 138887, at *10 (S.D. Fla. Sept. 30, 2014). While the *Jaramillo* court held that the defendant there was "at home" in Florida and thus subject to the court's general jurisdiction, the court expressed profound skepticism about the post-*Daimler* validity of transient general personal jurisdiction over foreign defendants:

> Putting aside for a moment **the constitutionally-suspect nature of tag jurisdiction** for citizens or resident nationals, **when applied to foreign defendants — who after Daimler clearly cannot be sued here under the guise of general jurisdiction** and legal fictions like agency theory — **the due process violation is even more stark.** It is hard to see how tag general jurisdiction can constitutionally lie for an individual who is invited to speak at the United Nations or before a joint session of Congress, or even worse for an individual who is on an international layover at Miami International Airport. **In other words, given the markedly restricted limitation on future exercises of general jurisdiction, Burnham's foundation has been severely undermined for those types of cases going forward**.

*Id.* at *11-12 (emphasis added).

As *Jaramillo* highlights, any finding that transient general personal jurisdiction survived *Daimler* would lead to unfair treatment of individual defendants compared to corporate or other entity defendants. Justice Sotomayor expressed this same concern in her concurrence in *Daimler*, where she recognized the importance of creating uniform jurisdictional rules for entities and natural persons, cautioning against jurisdictional rules that:

---

[13]   *Daimler* and *Waldman* were decided approximately twenty years after the Second Circuit in *Kadic v. Karadzic*, 70 F.3d 232, 246-47 (2d Cir. 1995) determined that personal service on a foreign defendant in New York was sufficient to establish personal jurisdiction. As expressed directly in *Daimler* and *Waldman*, there has been a recent sea change in general jurisdiction jurisprudence that renders the *Kadic* court's exercise of personal jurisdiction over a foreign defendant constitutionally suspect.

> create the incongruous result that an individual defendant whose only contact with a forum State is a one-time visit will be subject to general jurisdiction if served with process during that visit, *Burnham v. Superior Court of Cal., County of Marin*, 495 U. S. 604 (1990), but a large corporation that owns property, employs workers, and does billions of dollars' worth of business in the State will not be, simply because the corporation has similar contacts elsewhere (though the visiting individual surely does as well).

*Daimler*, 134 S. Ct. at 772-73 (Sotomayor, J., concurring).  Commentators are in near consensus in echoing this concern.  *See, e.g.*, Donald L. Doernberg, *Resoling American Shoe*, 2 Tex. A&M L. Rev. 247, 255 (2014) ("[I]f the quality and quantity of contacts really concern the Court, it must find a way to reconcile its theory of general jurisdiction over corporations with the idea of transient jurisdiction over individuals.").

Plaintiffs do not allege that Mr. Rajoub is "at home" in New York or that he has any suit-related contacts here.  Contemporary notions of due process, as articulated in *Daimler* and *Waldman*, do not permit a court to exercise personal jurisdiction over a foreign defendant like Mr. Rajoub based on nothing more than service of process in the forum state.[14]  Because there is no other arguable basis for personal jurisdiction in this case, Plaintiffs' Complaint should be dismissed for lack of personal jurisdiction.

---

[14]  Even if this Court determines that *Daimler* and *Waldman* cannot be read to expressly preclude exercising transient general personal jurisdiction over a foreign defendant like Mr. Rajoub, the rationale of these decisions applies here with such force that it would be appropriate for this Court to determine that it lacks personal jurisdiction over Mr. Rajoub on these facts.  *See Ntsebeza v. Ford Motor Co. (In re S. African Apartheid Litig.)*, 15 F. Supp. 3d 454, 459-60 (S.D.N.Y. 2014) (holding that lower courts are not bound by a prior decision if that decision "has been called into question by an intervening Supreme Court decision or by one of the Second Circuit sitting in banc" or if "its rationale is overruled, implicitly or expressly, by the Supreme Court, or the Second Circuit court in banc."); *see, e.g.*, *FDIC v. No. Bear Stearns Asset Backed Secs. I LLC*, 92 F. Supp. 3d 206, 213 (S.D.N.Y. 2015) ("The analytical framework set out by the Supreme Court in *Waldburger* calls into question the Second Circuit's analysis of the extender provision of HERA in its *UBS* decision, implicitly overruling material aspects of the *UBS* decision's rationale.").

**IV.** **Plaintiffs' Claim Under the ATS Fails Because Plaintiffs Are United States Citizens, and the Alleged Conduct Is Claimed to Have Occurred Outside of the United States.**

Plaintiffs' ATS claim should be dismissed for at least two independent reasons.[15]

First, Plaintiffs have no right to relief under the ATS because, as admitted in the Complaint, each Plaintiff is a United States citizen. *See* Compl. ¶¶ 2-9. Under the plain terms of the ATS, only "aliens" have a right to relief under the statute. *See* 28 U.S.C. § 1350 ("The district courts shall have original jurisdiction of any civil action by an **alien** for a tort only, committed in violation of the law of nations or a treaty of the United States.") (emphasis added). Indeed, in *Mohamad I*, the District of Columbia court dismissed the same ATS claim that Plaintiffs reassert here because, as Plaintiffs admitted, "the deceased and all of the plaintiffs are citizens of the United States." *See Mohamad v. Rajoub*, 664 F. Supp. 2d 20, 21 n.1 (D.D.C. 2009). And Plaintiffs previously conceded in a brief to this Court that they cannot maintain an ATS claim because they are all United States citizens. *See* Pls.' Memo. in Opp. to Defs.' Mot. to Dismiss and Mot. to Vacate Default [ECF No. 44] at 21 in *Asid Mohamad, et al. v. Jibril Rajoub, et al.*, Case No. 1:05-cv-08335-LAP (S.D.N.Y. 2005). Having previously conceded, as they had to, that they have no right to relief under the ATS, Plaintiffs' reassertion of that claim here is frivolous.

Second, Plaintiffs' ATS claim fails because all of the alleged conduct is claimed to have occurred outside of the United States. The Supreme Court has held that the ATS creates jurisdiction only for claims that "touch and concern" United States territory "with sufficient force to displace the presumption against extraterritorial application." *Kiobel*, 133 S. Ct. at 1669. In *Kiobel*, the Supreme Court held that district courts may not entertain an ATS claim when, as here, all the alleged conduct is claimed to have occurred outside of the United States. *See id.*

---

[15] Plaintiffs' Second Claim for Relief is brought under the ATS. *See* Compl. ¶¶ 69-75.

The Second Circuit has applied *Kiobel* to reject ATS claims based on alleged overseas conduct. *See Balintulo v. Daimler AG,* 727 F.3d 174, 190, 193 (2d Cir. 2013) ("[T]he Supreme Court's holding in *Kiobel* plainly bars the plaintiffs' claims" because "if all the relevant conduct occurred abroad, that is simply the end of the matter under *Kiobel.*"); *Sikhs for Justice, Inc. v. Nath*, 596 Fed. Appx. 7, 9 (2d Cir. 2014) ("Even assuming that, as plaintiffs allege, [defendants] carried out or were responsible for acts of violence against Sikhs, those acts were taken by Indian nationals against other Indian nationals in India. Under the presumption against extraterritoriality, then, as the Supreme Court held in jurisdictionally similar circumstances in *Kiobel*, we lack jurisdiction.").

No post-*Kiobel* case has based ATS jurisdiction solely on the fact that the alleged victim was a U.S. citizen and the isolated fact of citizenship would hardly provide the "sufficient force" to overcome the presumption against extraterritorial application.[16]   The ATS claim should be dismissed as a matter of law.

## V.      Plaintiffs' TVPA Claim Should Be Dismissed.

For at least three reasons, Plaintiffs' TVPA claim should be dismissed.[17]

### A.      The alleged acts were not committed under authority or color of law of a "foreign nation."

The TVPA contains an explicit state-actor requirement in that only individuals who are acting under authority or color of law of a "foreign nation" can be held liable under the statute. *See* 28 U.S.C. § 1350 note 2(a); *Chowdhury v. WorldTel Bangl. Holding, Ltd.*, 746 F.3d 42, 51

---

[16]    *See, e.g.*, *Mastafa v. Chevron Corp.,* 770 F.3d 170, 188 (2d Cir. 2014) ("[I]n identifying the conduct which must form the basis of the violation and the jurisdictional analysis under the ATS, precedents make clear that neither the U.S. citizenship of defendants, nor their presence in the United States, is of relevance for jurisdictional purposes."); *Warfaa v. Ali*, 811 F.3d 653, 661 (4th Cir. 2016) ("Mere happenstance of residency, lacking any connection to the relevant conduct, is not a cognizable consideration in the ATS context.").

[17]    Plaintiffs' First Claim for Relief is brought under the TVPA.  *See* Compl. ¶¶ 61-68.

(2d Cir. 2014) (the TVPA is "naturally understood to address primarily conduct occurring in the territory of ***foreign sovereigns***") (emphasis added); *Wiwa v. Royal Dutch Petroleum Co.*, 2002 U.S. Dist. Lexis 3293, at *37 (S.D.N.Y. Feb. 22, 2002) (holding that "in order for plaintiffs to sustain their claims . . . brought pursuant to the TVPA, they ***must*** satisfy the state action requirement") (emphasis added).[18]

"Courts repeatedly have held that neither the PA nor the PLO is a 'state' under United States or international law" and "the United States does not recognize Palestine or the PA as a sovereign government." *Waldman v. PLO*, 835 F.3d at 323; *accord*, *Livnat v. Palestinian Auth*., 851 F.3d 45, 50 (D.C. Cir. 2017) (observing that the "parties acknowledge that the Palestinian Authority is not recognized by the United States as a government of a sovereign state," whether "in law or fact").[19] Unsurprisingly, therefore, no federal court has ever determined that employees of the PA or PLO are "state-actors."[20]

---

[18] The TVPA and the ATS have "similar, albeit not identical, state action requirements." *Wiwa*, 2002 U.S. Dist. Lexis 3293, at *37. In *Kadic*, 70 F.3d at 239-41, the Second Circuit addressed the state action requirement for the ATS. The court held that the Bosnian-Serb republic of Sprska satisfied the definition of a "state" under the test laid out in the Restatement (Third) of the Foreign Relations Law of the United States § 201 (1987). *Id.* at 244-45. In addition, the court held that, under the ATS, non-state actors could potentially be liable for genocide and war crimes.

For at least two reasons, *Kadic* does not support treating the PLO or PA as state actors for purposes of the TVPA. First, *Kadic* did not address the state actor requirement for the TVPA, which, unlike the ATS, mandates state action by the express language of the statute. *See Wiwa*, 2002 U.S. Dist. Lexis 3293, at *37 (quoting 28 U.S.C. § 1350, note, § 2(a)) ("Statutory language makes clear that *all* claims brought under the TVPA must demonstrate that the alleged violations were perpetrated 'under actual or apparent authority, or color of law, of any foreign nation.' Thus, in order for plaintiffs to sustain their claims against [defendant] brought pursuant to the TVPA, they must satisfy the state action requirement. The ACTA's state action requirement is defined by precedent and is more complex."). Second, *Kadic* held that non-state actors could only be liable under the ATS for genocide and war crimes, neither of which is alleged here.

[19] *See also, e.g.*, *Ungar v. PLO*, 402 F.3d 274, 292 (1st Cir. 2005) (determining that the "defendants have not carried their burden of showing that Palestine satisfied the requirements for statehood under the applicable principles of international law at any point in time"); *Knox v. PLO*, 306 F. Supp. 2d 424, 438 (S.D.N.Y. 2004) (determining that "defendants failed to carry

Thus, for Plaintiffs' TVPA claim to avoid dismissal, this Court would have to be the first court to ever determine that the PLO and/or PA, and their officials, are state-actors under American law.  The Second Circuit's decision in *Waldman* and the D.C. Circuit's decision in *Livnat* wholly preclude any basis for doing so; accordingly, Plaintiffs' TVPA claim should be dismissed.  *See Livnat,* 851 F.3d at 50.

### B.   Plaintiffs failed to plead sufficient facts to establish standing under the TVPA.

Individual plaintiffs bringing a wrongful death claim under the TVPA must "adequately allege that they are the appointed 'legal representative[s]' of the family members they purport to represent."  *See Sikhs for Justice, Inc. v. Gandhi*, 614 Fed. Appx. 29, 31 (2d Cir. 2015) (affirming dismissal of a TVPA claim brought by the alleged victim's family members partly because they failed to sufficiently allege that they were the proper legal representatives of the victim); *see also Fisher v. Great Socialist People's Libyan Arab Jamahiriya*, 541 F. Supp. 2d 46, 54 n.10 (D.D.C. 2008) (dismissing a TVPA claim because "[n]one of the [] plaintiffs contend[ed] that they [we]re the legal representative or administrator of [the victim's] estate").[21]

---

their burden to demonstrate that the PLO or PA, even in combination, have sufficient capacity to conduct international relations to satisfy that criterion of statehood"); *Biton v. PLO*, 510 F. Supp. 2d 144, 146 (D.D.C. 2007) (determining that PLO and PA are collaterally estopped from arguing that Palestine is a "foreign state" for purposes of the ATA).

[20]   Prior to the Oslo Accords, under which the PLO and Israel agreed to establish the PA, the Second Circuit applied the three-factor Restatement test to conclude that the PLO was not a state actor.  *See Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione, etc*., 937 F.2d 44 (2d Cir. 1991).  In *Mohamad I*, Plaintiffs admitted that the PA and PLO could not satisfy the Restatement test, claiming that "the PA lacks the legal capacity to carry out diplomatic activities and the PLO is not a government."  *See* Reply in Further Support of Pls.' Mot for Transfer [ECF No. 39] at 7 in *Asid Mohamad, et al. v. Jibril Rajoub*, et al., Case No. 1:05-cv-08335-LAP (S.D.N.Y. 2005).  Plaintiffs' counsel has taken a similar position in other cases involving the PLO.  *See, e.g., Shafi*, 686 F. Supp. 2d at 29 (noting that "the parties agree that the PA and the PLO are non-state actors," in a case where the plaintiff was represented by Plaintiffs' counsel here).

[21]   In *Fisher*, the court looked to the law of each plaintiff's state of domicile to determine whether the plaintiffs had standing to bring a wrongful death action.  *See* 541 F. Supp. 2d at 54-

Here, Plaintiffs failed to plead any facts that would support a finding that they are the properly appointed legal representatives of Mr. Rahim. This failure, alone, warrants dismissal of the TVPA claim. *See, e.g.*, *Sikhs*, 614 Fed. Appx. at 31; *Fisher*, 541 F. Supp. 2d at 54-55.[22]

### C.      Plaintiffs failed to plead sufficient facts to state a claim for TVPA relief.

A complaint must "provide the grounds [for] entitlement to relief," and this "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). A complaint that contains "only the barest of conclusory allegations without notice of the factual grounds on which they purport to be based" should be dismissed. *See In re Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d 539, 564 (S.D.N.Y. 2005).

The Complaint seeks to hold Mr. Rajoub liable for the alleged actions of Palestinian security forces, solely because Mr. Rajoub commanded those forces at the time. It does not allege that Mr. Rajoub carried out personally, authorized, or even had any knowledge of Mr.

---

55. Here, this analysis is not possible because Plaintiffs not only failed to allege that they were the appointed legal representatives of Mr. Rahim, but they failed to indicate their states of domicile in the Complaint.

[22]   Relatedly, there is a split of authority on whether non-victim plaintiffs can recover for their own injuries in a TVPA claim. *Compare Doe v. Drummond Co.*, 2009 U.S. Dist. Lexis 132594, at *59-60 (N.D. Ala. Nov. 9, 2009) ("This court is convinced that a wrongful death claimant can have no standing under the TVPA if she seeks damages on her own behalf" because there "is simply nothing in the statute suggesting that damages are recoverable for anything beyond those sought 'on behalf of' a victim."), *and Fisher*, 541 F. Supp. 2d at 54 ("The plain language and the legislative history of the TVPA make clear that standing is limited to the victim himself or one bringing a claim on behalf of the victim. . . . Thus, the [plaintiffs] cannot seek damages for any injuries they sustained as a result of their brother's death."), *with Baloco v. Drummond Co.*, 640 F.3d 1338, 1347 n.11 (11th Cir. 2011) (holding that a properly appointed legal representative of the victim is not limited to seeking damages only on behalf of the victim). Here, because the TVPA's legislative history evidences that the statute envisions suits brought only "on behalf of" the victim, *see* H.R. Rep. 102-367(I), at 4 (1991), reprinted in 1992 U.S.C.C.A.N. 84, 87; S. Rep. 102-249, at 6 (1991) [Ex. D], the *Doe* and *Fisher* decisions represent the better approach. The Court should reject any claim by Plaintiffs that they are entitled to relief under the TVPA for their own alleged injuries.

Rahim's alleged torture and killing, and thus fails as a matter of law to allege that took he actions "under the authority or color of law" of a foreign nation.  Plaintiffs' TVPA claim cannot survive without a sufficient pleading of these facts.  *See, e.g.*, *Chowdhury v. Worldtel Bangl. Holding, Ltd.*, 588 F. Supp. 2d 375, 387-88 (E.D.N.Y. 2008) (holding that plaintiffs failed to adequately plead that defendant acted "under color of law" as the TVPA requires because there were no allegations that the defendant "witnessed or even knew that the torture was occurring").

Plaintiffs also failed to plead sufficient facts to show that they exhausted local remedies. The TVPA expressly states that a court "must decline to hear a TVPA claim . . . if the claimant has not exhausted adequate and available remedies in the place in which the conduct giving rise to the claim occurred."  28 U.S.C. 1350, note 2(b).  Plaintiffs' conclusory claim in their Complaint that they "have exhausted all other remedies for obtaining justice," *see* Compl. ¶ 66, is insufficient to show that they met this requirement.  *See Harbury v. Hayden*, 444 F. Supp. 2d 19, 41 (D.D.C. 2006) (dismissing a TVPA claim partly because the "plaintiff has neither alleged nor established that she has ever pursued and/or exhausted her remedies against her husband's alleged torturers in the place in which the conduct giving rise to the claim occurred").

## VI. Plaintiffs' Claim for Alleged Violations of the Law of Nations Under 28 U.S.C. Section 1331 Should Be Dismissed.

Plaintiffs claim under 28 U.S.C. Section 1331 for alleged violations of the "Law of Nations"[23] should be dismissed because 28 U.S.C. Section 1331 does not provide a substantive right to relief for an alleged violation of international law.  In *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004), the Supreme Court rejected the argument that common law claims for alleged violations of international law may be maintained under federal common law:

---

[23]   Plaintiffs' Third Claim for Relief is brought under 28 U.S.C. Section 1331.  *See* Compl. ¶¶ 76-82.

Section 1350 was enacted on the congressional understanding that courts would exercise jurisdiction by entertaining some common law claims derived from the law of nations; and *we know of no reason to think that federal-question jurisdiction was extended subject to any comparable congressional assumption.* Further, our holding today is consistent with the division of responsibilities between federal and state courts after *Erie*, as a more expansive common law power related to 28 U.S.C. § 1331 might not be.

*Sosa*, 542 U.S. at 731 n.19 (2004) (emphasis added) (citations and internal quotations omitted).[24]

*Sosa* and it progeny foreclose Plaintiffs' claim that 28 U.S.C. Section 1331 provides a substantive right to relief for an alleged violation of international law.  Plaintiffs' claim for relief under Section 1331 is frivolous and should be dismissed.[25]

## VII.   Plaintiffs' Common Law Claims Should Be Dismissed.

The causes of action in Plaintiffs' Fourth Claim for Relief (brought under New York law) and Fifth Claim for Relief (brought under "West Bank" law) are duplicative.  *See* Compl. ¶¶ 83-104.  Because of this duplication, the Fourth Claim for Relief or the Fifth Claim for Relief

---

[24] No post-*Sosa* decision has held that Section 1331 provides an independent basis for federal common law claims for violations of international law.  Indeed, Plaintiffs made the exact same federal common law claim in *Mohamad I* that they now make here, and the District Court for the District of Columbia squarely rejected it, holding that "fashion[ing] a cause of action for [Plaintiffs] out of federal common law [wa]s *not* supported by the *Sosa* decision."  *Mohamad v. Rajoub*, 664 F. Supp. 2d 20, 23 (D.D.C. 2009) (emphasis added).  The D.C. Circuit affirmed this decision, holding that "the Rahims do not have a cause of action cognizable under § 1331 for an alleged violation of federal common law."  *Mohamad v. Rajoub*, 634 F.3d 604, 610 (D.C. Cir. 2011).  *See also Almog v. Arab Bank, PLC*, 471 F. Supp. 2d 257, 294 (E.D.N.Y. Jan. 29, 2007) (dismissing alleged violations of international law brought under 28 U.S.C. § 1331 because "Plaintiffs have offered no sound basis for these federal common law claims") (internal quotation marks omitted); *Serra v. Lappin*, 600 F.3d 1191, 1197 (9th Cir. 2010) ("If any plaintiff could bring any claim alleging a violation of the law of nations under federal-question jurisdiction, there would be no need for statutes such as the ATS and the Torture Victim Protection Act . . . .").

[25] Even if 28 U.S.C. Section 1331 provided Plaintiffs with a right to bring a claim for a violation of international law—which it does not—Plaintiffs' claim under Section 1331 still fails because Mr. Rajoub is not a state actor and alleged torture by a nonstate actor is not a violation of federal common law.  *See* discussion *supra* Part V.A and n.17; *see also Ali Shafi*, 642 F.3d at 1096 (citing *Tel-Oren v. Libyan Arab Republic*, 726 F.2d 774, 791-795 (D.C. Cir. 1984) (Edwards, J., concurring)).

should be dismissed in its entirety, on the face of the Complaint. *See Frontline Processing Corp. v. Merrick Bank Corp.*, 2014 U.S. Dist. Lexis 27571, at *18 (S.D.N.Y. Mar. 3, 2014) (dismissing duplicative claims as a matter of law).

Further, Plaintiffs' Complaint fails to plead sufficient facts to state a claim for relief for the causes of action in Plaintiffs' Fourth and Fifth Claims for Relief.  Specifically, because Plaintiffs failed to plead sufficient facts to show that Mr. Rajoub had anything to do with, or even knowledge of, Mr. Rahim's death, all of these common law causes of action fail as a matter of law.  *See Leibovitz v. City of New York*, 2015 U.S. Dist. Lexis 170476, *43 (S.D.N.Y. Dec. 18, 2015) ("To satisfy the plausibility standard established in *Twombly* and *Iqbal*, the plaintiff must allege some conduct by [defendant] based on more than speculation.").

## CONCLUSION

For each of the foregoing reasons, Plaintiffs' Complaint should be dismissed with prejudice.  Because any amended pleading would be futile, certainly with respect to the *res judicata* defense, dismissal should be without leave to amend.

Respectfully Submitted:

*s/ Gassan A. Baloul*
Gassan A. Baloul (GB-4473)
SQUIRE PATTON BOGGS (US) LLP
30 Rockefeller Plaza
New York, NY 10112
Telephone:  (212) 872 9800
Facsimile:  (212) 872 9815
Email:  gassan.baloul@squirepb.com

Mitchell R. Berger (MB-4112)
SQUIRE PATTON BOGGS (US) LLP
2550 M Street NW
Washington, D.C. 20037
Telephone:  (202) 457 5601
Facsimile:  (202) 457 6315
Email:  mitchell.berger@squirepb.com

*Attorneys for Defendant Jibril Rajoub*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 26, 2017, a true and correct copy of the foregoing was electronically filed through the Court's CM/ECF system, which will automatically serve all counsel of record.

*s/ Gassan A. Baloul*
Gassan A. Baloul